

# IN THE
# TENTH COURT OF APPEALS

## No. 10-09-00113-CR

**RONNIE LINLEY,**

                                                    **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                    **Appellee**

From the 220th District Court
Bosque County, Texas
Trial Court No. 14,278

## MEMORANDUM  OPINION

Ronnie Linley was found guilty by a jury of aggravated assault, a second-degree felony.  TEX. PEN. CODE ANN. § 22.02 (Vernon 2003).  He elected to have the trial court assess his punishment.  The trial court sentenced him to ten (10) years in the Texas Department of Criminal Justice – Institutional Division.  Linley raises a sole issue on appeal, that the evidence was factually insufficient to support the jury's finding that he stabbed the victim intentionally, knowingly, or recklessly.  Because we find that the evidence was factually sufficient, we affirm.

*Standard of Review*

In a factual sufficiency review, the appellate court views the evidence in a neutral light and asks whether the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. *Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Grotti v. State*, 273 S.W.3d 273, 283 (Tex. Crim. App. 2008). Although a factual sufficiency review authorizes an appellate court, to a very limited degree, to act as a "thirteenth juror," the appellate court must nevertheless give the jury's verdict a great degree of deference. *Watson v. State*, 204 S.W.3d 404, 416-17 (Tex. Crim. App. 2006). The fact-finder alone determines what weight to place on contradictory testimonial evidence because that determination depends on the fact-finder's evaluation of credibility and demeanor. *See* TEX. CODE CRIM. PROC. ANN. art. 36.13 and 38.04 (stating that the jury is the exclusive judge of the facts and of the weight given to testimony); *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008). We afford almost complete deference to a jury's decision when that decision is based upon an evaluation of credibility as the jury is in the best position to judge the credibility of a witness because it is present to hear the testimony, as opposed to an appellate court, which relies on the cold record. *Lancon*, 253 S.W.3d at 705. *See also Marshall v. State*, 210 S.W.3d 618, 625 (Tex. Crim. App. 2006).

A "high level of skepticism about the jury's verdict" is required before an appellate court may reverse due to factual insufficiency. *Watson*, 204 S.W.3d at 417. An appellate court may not find the evidence to be factually insufficient merely because there are "reasonably equal competing theories of causation." *Goodman v. State*, 66

S.W.3d 283, 287 (Tex. Crim. App. 2001). And a factual sufficiency reversal certainly may not occur when the evidence actually preponderates in favor of conviction. *Watson*, 204 S.W.3d at 417. Before reversing a conviction on the basis of factual insufficiency, an appellate court must detail all the relevant evidence and must explain in exactly what manner the evidence is factually insufficient. *Watson*, 204 S.W.3d at 414.

*Factual Background*

Stacy was the common law wife of Linley and they resided together in Bosque County. At some point during the day of July 7, 2008, Stacy and Linley got into an altercation regarding their impending separation. According to Stacy, Linley had been verbally and physically assaulting her prior to her being stabbed. Stacy claimed to be huddled down next to a refrigerator with her arms over her face because her face hurt from Linley hitting her repeatedly. Stacy felt warmth when she was cut on her back, in the general vicinity of her lung on her left side. She was unable to escape as the house had one exit, which Linley blocked. Stacy was unable to use either the house phone or cell phone to call anyone. She attempted to stop the bleeding and begged Linley to take her to the hospital, which he did.

Stacy and Linley left the house together in his vehicle. According to Stacy, Linley began asking Stacy if she was coming back to him and whether she intended to press charges against him. When Stacy told him she wasn't coming back, Linley turned the van to head back towards their home. Stacy jumped from the vehicle and ran to a house, where she forced open the door to ask for help. Linley followed her and pulled her from the home forcibly. A man, later identified as Neuman, approached them and

got Linley away from Stacy. Stacy was taken to the hospital in Clifton then care flighted to a hospital in Waco, where she received three staples. She also had some abrasions to her lower abdomen.

Todd Neuman is a plumber who was on a job near the place where Stacy jumped from the vehicle. Neuman heard screaming and went to see what was happening. He observed Linley holding clumps of Stacy's hair in his hands, assaulting Stacy, by hitting her repeatedly and pulling her by her hair. Linley was screaming and cursing at Stacy. Stacy was very upset as well. Neuman observed Stacy and Linley in a residence and observed Linley pull Stacy out of the home forcibly and throw her down on the porch. Neuman eventually convinced Linley to stop and Linley drove away. Stacy was afraid Linley would return and kill her. Stacy told Neuman he had stabbed her, run her over, and tried to kill her. He then called 911 for assistance. Neuman had not met either party before this incident.

Linley disagreed with Stacy's version of events. He did agree that Stacy wanted to leave him, but stated that Stacy was the aggressor. He turned around in their home and saw Stacy coming at him with a knife. Having training in martial arts, he grabbed Stacy's hand that held the knife and twisted her arm behind her, causing them both to fall. During the fall, Stacy stabbed herself. Linley was never in possession of the knife. Stacy did jump from the vehicle but she had done this on other occasions. Linley believed that she had attempted to put herself under the wheels of the van intentionally. Linley denied Neuman's description of the events entirely.

Walt Waddell testified that he was "a little bit" familiar with Stacy, and that Stacy's reputation in the community for veracity and truthfulness wasn't very good, that a lot of people did not like her, and she was unstable and not dependable.

The jury could believe or disbelieve all or any part of Linley's testimony regarding his version of the events of how Stacy was injured. *Lancon,* 253 S.W.3d 705; *Evans v. State*, 202 S.W.3d 158 (Tex. Crim. App. 2006); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986); *Penagraph v. State*, 623 S.W.2d 341, 343 (Tex. Crim. App. 1981). Further, the jury, after hearing all of the testimony, could have believed Stacy's version of how the altercation took place as well as Neuman's testimony regarding what he subsequently observed. This is a case that almost entirely rests on the jury's determination of the credibility of the witnesses. When we view the evidence in a neutral light, we cannot say that the evidence supporting the verdict is so weak or so against the great weight and preponderance of the evidence as to render the verdict manifestly unjust. We find the evidence is factually sufficient to support the jury's verdict. We overrule Linley's sole point of error.

*Conclusion*

We find the evidence is factually sufficient to support the jury's finding Linley guilty of aggravated assault. Therefore, we affirm the conviction of guilt.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
      Justice Reyna, and
      Justice Davis
Affirmed
Opinion delivered and filed August 19, 2009
Do not publish
[CR25]